```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TENNESSEE
                       WESTERN DIVISION
```

ROBERT LEE BARNETT,

    Plaintiff,

vs.                                        No. 04-2750-B/V

MARK H. LUTTRELL, JR., et al.,

    Defendants.

```
              ORDER CORRECTING THE DOCKET
              ORDER GRANTING LEAVE TO AMEND
                   ORDER OF DISMISSAL
            ORDER DENYING APPOINTMENT OF COUNSEL
        ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
                            AND
                NOTICE OF APPELLATE FILING FEE
```

Plaintiff Robert Lee Barnett, RNI number 162920,[1] who is currently an inmate at the Shelby County Correctional Center ("SCCC") in Memphis, filed a pro se complaint pursuant to 42 U.S.C. § 1983 on September 16, 2004, in connection with his previous incarceration at the Shelby County Criminal Justice Complex ("Jail"), where his booking number was 04118660, along with a stack of exhibits and a motion seeking leave to proceed in forma pauperis. The Court issued an order on September 30, 1995 assessing

---

[1] Plaintiff's Tennessee Department of Correction prisoner number is 148863.

the $150 civil filing fee.[2] The Clerk shall record the defendants as Shelby County Sheriff Mark H. Luttrell, Jr., Tony Cooper, M. Love, M. Webb, N. Terrie, J. Hicks, James Bodenstab, Counselor Lester, Stephene Russel, and Lieutenant D. Tillman.

The plaintiff has also filed a number of additional documents. On November 30, 2004, plaintiff filed a document, entitled "Status Report," that the Court construes as a motion to amend his complaint to add as additional defendants Shelby County, Correctional Medical Services ("CMS"), Dr. G. Stipanuk, S. Webb (who may or may not be the same person as the "M. Webb" sued in the original complaint), and N. Terrie. On February 16, 2005, plaintiff filed a notice of change of address, along with a document elaborating on his claims against certain of the defendants. On July 13, 2005, plaintiff submitted a document, entitled "Motion of Status Report and Request for Admission," that purports to amend his complaint to assert a claim against Officer J. Hicks. On July 18, 2005, plaintiff filed a document, entitled "Pleading Motion," that seeks to amend his complaint to include unspecified injuries incurred on June 26, 2004. On September 1, 2005, plaintiff presented a document, entitled "Affidavit of Complaint In support of motion under 28 USC 1915, Newly Discovered," that seeks to add additional claims. On October 6, 2005, plaintiff filed a document, entitled "Trial Memoranda of Facts and Laws In support of Motion

---

[2]   The docket sheet indicates that the copy of the order intended for the Director of the SCCC was mailed to the Jail. In order to ensure that the filing fee in this case is paid, the Clerk is ORDERED, for the second time, to send a copy of the September 30, 2005 order to the Director of the SCCC at his correct address.

Under 28 USC 1915," that elaborates on the incident of June 26, 2004. On October 20, 2005, the plaintiff filed an unsigned document, entitled "Trial Memorandum of Fact/Law," which purports to set forth his legal position. On November 8, 2005, the plaintiff filed a motion seeking appointment of counsel and another document, entitled "Trial Memoranda," that elaborates on the basis for his claims. On January 31, 2006, the plaintiff submitted four documents. The first, entitled "Notice of Pleading Special Matters," that submits copies of the plaintiff's medical records for two visits to the Regional Medical Center at Memphis in November, 2005. The second document, entitled "Affidavit of Complaint In Support Of Motion Under 28 U.S.C. 1915 Motion For Summary Judgement [sic]," appears to seek a total of $500,000 in damages. The third document, entitled "Motion To Amend The Amount of Relief," seeks judgment in the amount of $500,000 for the incident of June 26, 2004. The fourth document, entitled "Motion to Subpoena," seeks the issuance of subpoenas so plaintiff can take the depositions of two inmates at the SCCC for unspecified reasons. For good cause shown, the Court GRANTS each and every one of the plaintiff's motions for leave to amend.

I.   <u>Analysis of Plaintiff's Claims</u>

The original complaint filed by this plaintiff consists of two form complaints, accompanied by approximately two inches of documents as attachments to the complaint and as exhibits. Although the plaintiff has submitted multiple form complaints and other attachments to those complaints, he has not submitted a coherent

narrative description of the nature of his claims. The subject of this lawsuit appears to concern the medical treatment afforded the plaintiff at the Jail.[3] The claims against defendant Luttrell seem to assert that, as sheriff, he has a responsibility to train and supervise Jail employees.

Defendant Love is sued for allegedly inappropriate responses to grievances submitted by the plaintiff and for allegedly "falsifying" the plaintiff's name, inmate number, and location so that he would not receive any responses that were issued to his grievances.

Defendant Cooper is named because he allegedly denied plaintiff medical attention by failing to supervise the nursing staff to ensure that inmates receive appropriate medical attention and because he "violated Plaintiff [sic] constutional [sic] rights for allowing inmate to enter the Correctional Medical system twice maybe three times with the tuberculosis germs in his system without being treated for the germs knowing that untreated germs can cause disease." The complaint also alleges that, in 2002, defendant Cooper realized he had denied plaintiff treatment and he attempted to cover it up by issuing the plaintiff an asthma pump to clean tuberculosis germs from his lungs. He further claims that, in September, 2002, plaintiff was administered a skin test for tuberculosis, and he believes the results were positive. However, a Lieutenant Smith, who is not a party to this action, insisted

---

[3] For reasons that are not clear, the plaintiff apparently submitted another lawsuit on October 26, 2004 on virtually the same subject matter, which was docketed as <u>Barnett v. Luttrell, et al.</u>, No. 04-2878-Ml/V (W.D. Tenn.).

that the bump on the plaintiff's arm was a bruise. Although it is not clear from the complaint, it appears that medical personnel at the Jail did not attempt to check the results of the plaintiff's test. The complaint also alleges that defendant Cooper did not seek that plaintiff had a "cat skin" (which probably means a cat scan) after unspecified head injuries, and he did not require a nurse to give the plaintiff any medication for an unspecified rash.

      The allegations against defendant Webb, who is apparently a nurse, are extremely unclear. On the one hand, plaintiff asserts that she is sued because she failed to check the results of plaintiff's tuberculosis test on June 26, 2004, which allegedly "allowed plaintiff [sic] condition to be abused and neglected." Defendant Webb also allegedly neglected the plaintiff's condition on September 17, 2002, which is presumably the date on which his tuberculosis test should have been read. The plaintiff was apparently not a prisoner during portions of the time from September, 2002 and June, 2004. However, the complaint alleges that, in his most recent incarceration, Webb's actions resulted in the plaintiff's placement in the general population at the Jail for forty-two (42) days, and her previous neglect in 2002 resulted in the plaintiff spending one hundred fifty-five (155) days in the general population. However, the plaintiff also claims that, on June 26, 2004, Webb told the plaintiff that he was infected with the tuberculosis virus, and that she had previously given him this information in 2002. Plaintiff received a chest x-ray on July 1, 2004, which showed a spot on his lung. Barnett was taken to the

5

Memphis/Shelby County Health Department for another tuberculosis test on July 27, 2004, which was positive. At that time, he was prescribed Isoniazid. Attached to the complaint is a Medical Information Sheet the plaintiff received from the Health Department, which says patients taking Isoniazid should avoid a drug called Dilantin. The plaintiff complains that an unspecified defendant prescribed him Dilantin on June 27, 2004.

The inmate is suing defendant Terrie, a nurse, because she (I) gave plaintiff Dilantin, which is allegedly a seizure medication, (ii) denied plaintiff treatment for a headache after an unspecified fall, and (iii) failed to treat an unspecified rash "after the 'outbreak' of the medication." The complaint also asserts that, ever since he took Dilantin, he has suffered from headaches.[4]

The claim against defendant Hicks is based on the fact that, on June 26, 2004, she allegedly sent plaintiff to the medical unit on a six-story escalator without an escort, after witnessing the plaintiff take a drug that had been prescribed for another inmate and that caused an allergic reaction. The plaintiff was housed on the fourth floor, and the medical unit was on the second floor. Plaintiff apparently became dizzy and fell, suffering unspecified injuries.

The allegations against defendants Bodenstab and Russel, who are not otherwise identified, are almost incomprehensible.

---

[4] Although the allegations against defendant Terrie suggest that plaintiff was prescribed Dilantin, the allegations against defendant Hicks, which are addressed infra, suggest that plaintiff accidentally ingested the Dilantin.

Bodenstab is alleged to have "sign[ed] a certificate form that was "trickey." Russel is claimed to have "gave plaintiff a complaint form that was trickey, Imposter, was not the real one but identy [sic] of the title. . . . The Complaint Form had spaces adjusted in it and printed text so the margins would be even, to deceive plaintiff."

Defendant Lester is sued because he did not permit plaintiff to visit the law library for a period of thirty-five (35) days, during which the library was closed, and he would not explain to the plaintiff why the library was closed.

Defendant Tillman allegedly called the plaintiff out of his cell on July 25, 2004 to speak to him about a grievance he had filed against defendant Hicks. Tillman told plaintiff that he had to speak to him about it before it was signed, then plaintiff signed the grievance form and Tillman allegedly stated that plaintiff would be unable to prove his allegations in court. Plaintiff contends that Tillman tricked him into signing papers he did not want to sign.

Finally, the original complaint lists as "co-defendants" Officer S. Jones, Officer C. Jones, Officer J. Randall, Sergeant T. Wilson, Gerald Stipanuk, J. Coleman, Officer M. Woody, and Nurse Rivera. As the complaint does not contain any factual allegations against these individuals, it is not clear whether the plaintiff intends to name them as additional defendants or as witnesses.

In his November 30, 2004 filing, Barnett elaborates on his claims against defendants Cooper, Webb, and Terrie. Although it

appears he also wants to sue Stipanuk and CMS, the complaint is does not clearly allege the basis for the plaintiff's claims against those defendants.

The inmate's February 16, 2005 filing elaborates on his claim against defendant Terrie and alleges that his claim against defendant Stipanuk, the doctor at the Jail, arises out of his failure to counsel the plaintiff about his tuberculosis. Plaintiff is presumably suing CMS because it provides medical care at the Jail and employs defendants Cooper, Stipanuk, Terrie, and Webb.

Plaintiff's July 13, 2005 filing reiterates the basis for his claims against defendant Luttrell and Hicks and asserts that the plaintiff seeks damages of $150,000 for the incident in which plaintiff fell on the escalator.

The July 18, 2005 filing seeks $100,000 in damages for the June 26, 2004 incident.

The September 1, 2005 filing asserts that, on November 29, 2004, plaintiff was not given unspecified prescribed medication. He filed a Health Services Request form on December 3, 2004 in which he complained about migraine headaches but was not given pain medication. On December 4, 2004, a nurse, who is not a party to this action, gave plaintiff the wrong medication. Barnett was subsequently promised that he would receive his medication on December 10, 2004. He further asserts that he did not promptly receive all his medications when he was transferred from the Jail to the SCCC, although he does not identify that party who is responsible for this alleged deficiency.

8

The October 6, 2005 filing reiterates the basis for the plaintiff's claim against defendant Terrie.

The "Trial Memoranda," filed on November 8, 2005, sets forth the factual basis for the plaintiff's claims and asserts, for the first time, that unspecified officers retaliated against the plaintiff for filing grievances.

The medical records filed on January 31, 2006 contain details of his treatment at the Regional Medical Center at Memphis in November, 2005 for headaches and a tooth extraction. These documents, which postdate the factual allegations in the complaint for at least a year, do not appear to be relevant. The plaintiff also submitted amendments with respect to the amount of monetary relief sought.

The Sixth Circuit has held that 42 U.S.C. § 1997e(a) requires a district court to dismiss a complaint without prejudice whenever a prisoner brings a prison conditions claim without demonstrating that he has exhausted his administrative remedies. Brown v. Toombs, 139 F.3d 1102 (6th Cir. 1998); see Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Booth v. Churner, 532 U.S. 731 (2001) (prisoner seeking only money damages must exhaust administrative remedies although damages are unavailable through grievance system). This requirement places an affirmative burden on prisoners of pleading particular facts

demonstrating the complete exhaustion of claims. Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000). To comply with the mandates of 42 U.S.C. § 1997e(a),

> a prisoner must plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome.

Id. at 642; see also Boyd v. Corrections Corp. of Am., 380 F.3d 989, 985-96 (6th Cir. 2004) (describing the standard for demonstrating exhaustion when prison officials fail to respond in a timely manner to a grievance), cert. denied, 125 S. Ct. 1639 (2005); Baxter v. Rose, 305 F.3d 486 (6th Cir. 2002) (prisoner who fails to allege exhaustion adequately may not amend his complaint to avoid a sua sponte dismissal); Curry v. Scott, 249 F.3d 493, 503-04 (6th Cir. 2001) (no abuse of discretion for district court to dismiss for failure to exhaust when plaintiffs did not submit documents showing complete exhaustion of their claims or otherwise demonstrate exhaustion). Furthermore, § 1997(e) requires the prisoner to exhaust his administrative remedies before filing suit and, therefore, he cannot exhaust those remedies during the pendency of the action. Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999). Finally, the Sixth Circuit recently has held that district courts are required to dismiss a complaint in its entirety, pursuant to 42 U.S.C. § 1997e(a), that contains any unexhausted claims. Jones Bey v. Johnson, 407 F.3d 801, 805-09 (6th Cir. 2005).

In this case, the plaintiff has not satisfied his burden of demonstrating, through particularized averments, that he exhausted his administrative remedies as to each of his claims. Although he submitted numerous grievances, and responses to grievances, with his original complaint, the plaintiff has not demonstrated that he filed any grievance that named defendants Luttrell, Bodenstab, and Lester, as required by Moorer v. Price, 83 Fed. Appx. 770, 772 (6th Cir. Dec. 9, 2003) (plaintiff did not exhaust claim against warden because his grievance did not identify the warden or articulate any claim against her); Thomas v. Woolum, 337 F.3d 720, 733-34 (6th Cir. 2003); and Curry, 249 F.3d at 504. Because of that clear deficiency, it is not necessary to consider, in detail, whether the plaintiff properly exhausted any of his claims through the full appeal process.

The Sixth Circuit recently stated that "[a] plaintiff who fails to allege exhaustion of administrative remedies through 'particularized averments' does not state a claim on which relief may be granted, and his complaint must be dismissed sua sponte." Baxter, 305 F.3d at 489. Moreover, pursuant to the recent decision in Jones Bey, a district court must dismiss any complaint that contains unexhausted claims rather than attempting to sever the exhausted claims. Accordingly, the Court DISMISSES the complaint, without prejudice, pursuant to 42 U.S.C. § 1997e(a).[5] As the case

---

[5] As the Sixth Circuit has explained, "If the plaintiff has exhausted his administrative remedies, he may always refile his complaint and plead exhaustion with sufficient detail to meet our heightened pleading requirement, assuming that the relevant statute of limitations has not run." Baxter, 305 F.3d
(continued...)

has been dismissed, the motion for appointment of counsel is DENIED as moot.

III. Appeal Issues

The next issue to be addressed is whether plaintiff should be allowed to appeal this decision in forma pauperis. Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. Id. Accordingly, it would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the defendants, yet has sufficient merit to support an appeal in forma pauperis. See Williams v. Kullman, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by plaintiff is not taken in good faith and plaintiff may not proceed on appeal in forma pauperis.

---

[5] (...continued)
at 489.

The final matter to be addressed is the assessment of a filing fee if plaintiff appeals the dismissal of this case.[6] In McGore v. Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997), the Sixth Circuit set out specific procedures for implementing the PLRA. Therefore, the plaintiff is instructed that, if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in McGore and § 1915(b).

IT IS SO ORDERED this 16th day of February, 2006.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[6] Effective November 1, 2003, the fee for docketing an appeal is $250. See Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

> Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the clerk of the district court, by the appellant or petitioner.