IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

|   |   |   |
|---|---|---|
| ROBERT LEE BARNETT, | ⁞ | |
| | ⁞ | |
| Plaintiff, | ⁞ | |
| | ⁞ | |
| vs. | ⁞ | No. 04-2750-STA-dkv |
| | ⁞ | |
| MARK H. LUTTRELL, JR., et al., | ⁞ | |
| | ⁞ | |
| Defendants. | ⁞ | |
| | ⁞ | |

---

ORDER CORRECTING THE DOCKET
ORDER OF DISMISSAL
ORDER DENYING PLAINTIFF'S THIRD MOTION FOR APPOINTMENT OF COUNSEL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

---

On September 16, 2004, Plaintiff Robert Lee Barnett, RNI number 162920, who is currently an inmate at the Shelby County Correctional Center in Memphis, filed a pro se complaint pursuant to 42 U.S.C. § 1983 in connection with his previous incarceration at the Shelby County Criminal Justice Complex ("Jail"), where his booking number was 04118660. Plaintiff's complaint consisted of two copies of the form complaint and a stack of exhibits. (Docket Entry ("D.E.") 1.) The defendants named in the original complaint are Shelby County Sheriff Mark H. Luttrell, Medical Administrator Tony Cooper, M. Love, Nurse Webb,[1] Nurse N. Terrie, Shift Officer J.

---

[1] This defendant is inconsistently identified in Plaintiff's filings as "M. Webb," "S. Webb," and "Mrs. Webb." (See D.E. 5 (amendment asserting claims against a nurse listed as "S. Webb" and "Mrs. Webb.")

Hicks, James Bodenstab, Counselor Lester, Stephene [sic] Russel [sic], and Lieutenant D. Tillman.

Plaintiff filed numerous amendments to his complaint, some of which added additional claims and parties. Those amendments asserted claims against Shelby County, Correctional Medical Services ("CMS"), Dr. G. Stipanuk, and S. Webb (who appears to be the same person as the "M. Webb" sued in the original complaint).[2] On February 16, 2006, the Court issued an order that, inter alia, granted leave to amend the complaint to add additional claims and defendants and dismissed the complaint without prejudice, pursuant to 42 U.S.C. § 1997e(a), on the basis of the total exhaustion rule set forth in Jones Bey v. Johnson, 407 F.3d 801, 805-09 (6th Cir. 2005). (D.E. 20.) Judgment was entered on February 17, 2006. (D.E. 21.) On June 7, 2007, the United States Court of Appeals for the Sixth Circuit issued an order vacating the dismissal of the action based on the intervening Supreme Court decision in Jones v. Bock, 127 S. Ct. 901 (2007), and remanded the case for further consideration in light of Jones. Barnett v. Luttrell, et al., No. 06-5438 (6th Cir. June 7, 2007). The mandate issued on July 9, 2007. The matter was reassigned to this judge on May 21, 2008. (D.E. 44.)

On August 7, 2008, Plaintiff filed another motion seeking appointment of counsel. (D.E. 49.)

---

[2]     The Clerk is directed to correct the docket to list all defendants added as a result of the Court's order of February 16, 2006. (See D.E. 20 at 3.)

I.   <u>Analysis of Plaintiff's Claims</u>

In the order entered on February 16, 2006, Judge Breen described Plaintiff's claims as follows:

> The original complaint filed by this plaintiff consists of two form complaints, accompanied by approximately two inches of documents as attachments to the complaint and as exhibits. Although the plaintiff has submitted multiple form complaints and other attachments to those complaints, he has not submitted a coherent narrative description of the nature of his claim. The subject of this lawsuit appears to concern the medical treatment afforded the plaintiff at the Jail. The claims against defendant Luttrell seem to assert that, as sheriff, he has a responsibility to train and supervise Jail employees.
>
> Defendant Love is sued for allegedly inappropriate responses to grievances submitted by the plaintiff and for allegedly "falsifying" the plaintiff's name, inmate number, and location so that he would not receive any responses that were issued to his grievances.
>
> Defendant Cooper is named because he allegedly denied plaintiff medical attention by failing to supervise the nursing staff to ensure that inmates receive appropriate medical attention and because he "violated Plaintiff [sic] constutional [sic] rights for allowing inmate to enter the Correctional Medical system twice maybe three times with the tuberculosis germs in his system without being treated for the germs knowing that untreated germs can cause disease." The complaint also alleges that, in 2002, defendant Cooper realized he had denied plaintiff treatment and he attempted to cover it up by issuing the plaintiff an asthma pump to clean tuberculosis germs form his lungs. He further claims that, in September, 2002, plaintiff was administered a skin test for tuberculosis, and he believes the results were positive. However, a Lieutenant Smith, who is not a party to this action, insisted that the bump on the plaintiff's arm was a bruise. Although it is not clear from the complaint, it appears that medical personnel at the Jail did not attempt to check the results of the plaintiff's test. The complaint also alleges that defendant Cooper did not see that plaintiff had a "cat skin" (which probably means a "cat scan") after unspecified head injuries, and he did not require a nurse to give the plaintiff any medication for an unspecified rash.

3

The allegations against defendant [M.] Webb, who is apparently a nurse, are extremely unclear. On the one hand, plaintiff asserts that she is sued because she failed to check the results of plaintiff's tuberculosis test on June 26, 2004, which allegedly "allowed plaintiff [sic] condition to be abused and neglected." Defendant Webb also allegedly neglected the plaintiff's condition on September 17, 2002, which is presumably the date on which his tuberculosis test should have been read. The plaintiff was apparently not a prisoner during portions of the time from September, 2002 [to] June, 2004. However, the complaint alleges that, in his most recent incarceration, Webb's actions resulted in the plaintiff's placement in the general population at the Jail for forty-two (42) days, and her previous neglect in 2002 resulted in the plaintiff spending one hundred fifty-five (155) in the general population. However, the plaintiff also claims that, on June 26, 2004, Webb told the plaintiff that he was infected with the tuberculosis virus, and that she had previously given him that information in 2002. Plaintiff received a chest x-ray on July 1, 2004, which showed a spot on his lung. Barnett was taken to the Memphis/Shelby County Health Department for another tuberculosis test on July 27, 2004, which was positive. At that time, he was prescribed Isoniazid. Attached to the complaint is a Medical Information Sheet the plaintiff received from the Health Department, which says patients taking Isoniazid should avoid a drug called Dilantin. The plaintiff complains that an unspecified defendant prescribed him Dilantin on June 27, 2004.

The inmate is suing defendant Terrie, a nurse, because she (I) gave plaintiff Dilantin, which is apparently a seizure medication, (ii) denied plaintiff treatment for a headache after an unspecified fall, and (iii) failed to treat an unspecified rash "after the 'outbreak' of the medication." The complaint also asserts that, ever since he took Dilantin, he has suffered from headaches.[3]

The claim against defendant Hicks is based on the fact that, on June 26, 2004, she allegedly sent plaintiff to the medical unit on a six-story escalator without an escort, after witnessing the plaintiff take a drug that had been prescribed for another inmate and that caused an allergic reaction. The plaintiff was housed on the fourth

---

[3]     In a footnote, the Court noted that, "[a]lthough the allegations against defendant Terrie suggest that plaintiff was prescribed Dilantin, the allegations against defendant Hicks, which are addressed infra, suggest that plaintiff accidentally ingested the Dilantin." (D.E. 20 at 6 n.4.)

floor, and the medical unit was on the second floor. Plaintiff apparently became dizzy and fell, suffering unspecified injuries.

The allegations against defendants Bodenstab and Russel, who are not otherwise identified, are almost incomprehensible. Bodenstab is alleged to have "sign[ed] a certificate form that was trickey." Russel is claimed to have "gave plaintiff a complaint form that is trickey, Imposter, was not the real one but identy [sic] of the title. . . . The Complaint Form had spaces adjusted in it and printed text so the margins would be even, to deceive plaintiff."

Defendant Lester is sued because he did not permit plaintiff to visit the law library for a period of thirty-five (35) days, during which the library was closed, and he would not explain to the plaintiff why the library was closed.

Defendant Tillman allegedly called the plaintiff out of his cell on July 25, 2004 to speak to him about a grievance he had filed against defendant Hicks. Tillman told plaintiff that he had to speak to him about it before it was signed, then plaintiff signed the grievance form and Tillman allegedly stated that plaintiff would be unable to prove his allegations in court. Plaintiff contends that Tillman tricked him into signing papers he did not want to sign.

Finally, the original complaint lists as "co-defendants" Officer S. Jones, Officer C. Jones, Officer J. Randall, Sergeant T. Wilson, Gerald Stipanuk, J. Coleman, Officer M. Woody, and Nurse Rivera. As the complaint does not contain any factual allegations against these individuals, it is not clear whether the plaintiff intends to name them as additional defendants or as witnesses.[4]

In his November 30, 2004 filing, Barnett elaborates on his claims against defendants Cooper, Webb, and Terrie. Although it appears he also wants to sue Stipanuk and CMS, the complaint does not clearly allege the basis for the plaintiff's claims against those defendants.

The inmate's February 16, 2005 filing elaborates on his claim against defendant Terrie and alleges that his claims against defendant Stipanuk, the doctor at the

---

[4]     Dr. Stipanuk was named a party in the February 16, 2006 order granting leave to amend. See supra p. 2.

5

Jail, arises out of his failure to counsel the plaintiff about his tuberculosis. Plaintiff is presumably suing CMS because it provides medical care at the Jail and employs defendants Cooper, Stipanuk, Terrie, and Webb.

Plaintiff's July 13, 2005 filing reiterates the basis for his claim against defendant Luttrell and Hicks and asserts that the plaintiff seeks damages of $150,000 for the incident in which plaintiff fell on the escalator.

The July 18, 2005 filing seeks $100,000 in damages for the June 26, 2004 incident.

The September 1, 2005 filing asserts that, on November 29, 2004, plaintiff was not given unspecified prescribed medication. He filed a Health Services Request form on December 3, 2004 in which he complained about migraine headaches but was not given pain medication. On December 4, 2004, a nurse, who is not a party to this action, gave plaintiff the wrong medication. Barnett was subsequently promised that he would receive his medication on December 10, 2004. He further asserts that he did not promptly receive all his medications when he was transferred from the Jail to the SCCC, although he does not identify that party who is responsible for this alleged deficiency.

The October 6, 2005 filing reiterates the basis for the plaintiff's claim against Defendant Terrie.

The "Trial Memoranda," filed on November 8, 2005, sets forth the factual basis for the plaintiff's claims and asserts, for the first time, that unspecified officers retaliated against the plaintiff for filing grievances.

(D.E. 20 at 3-9 (footnote omitted).)

The Court is required to screen prisoner complaints and to dismiss any complaint, or portion thereof, if the complaint—

(1)  is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2)  seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); <u>see also</u> 28 U.S.C. § 1915(e)(2)(B). Portions of Plaintiff's complaint are subject to dismissal.

The complaint in this action fails to comply with the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(a)(2) requires "[a] pleading that states a claim for relief" to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 10(b) provides as follows:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

Plaintiff has not complied with these requirements, which compounds the confusion created by a lawsuit that purports to sue numerous defendants for a series of unrelated incidents occurring over a three-year period.

In assessing whether the complaint in this case states a claim on which relief may be granted,

> [t]he court must construe the complaint in the light most favorable to plaintiffs, accept all well-pled factual allegations as true and determine whether plaintiffs undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief. . . . Though decidedly liberal, this standard does require more than bare assertions of legal conclusions. . . . Plaintiffs' obligation to provide the "grounds" of their entitlement to relief requires more than labels and conclusions or a formulaic recitation of the elements of the cause of action. The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show <u>entitlement</u> to relief. . . . To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory.

7

Leauge of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citations omitted; emphasis in original); see also Minadeo v. ICI Paints, 398 F.3d 741, 762-63 (6th Cir. 2005) (complaint insufficient to give notice of statutory claim); Savage v. Hatcher, 109 F. App'x 759, 761 (6th Cir. 2004); Coker v. Summit County Sheriff's Dep't, 90 F. App'x 782, 787 (6th Cir. 2003) (affirming dismissal of pro se complaint where plaintiff "made 'bare bones,' conclusory assertions that do not suffice to state a cognizable constitutional claim"); Payne v. Secretary of Treas., 73 F. App'x 836, 837 (6th Cir. 2003) (affirming sua sponte dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2); "Neither this court nor the district court is required to create Payne's claim for her."); Foundation for Interior Design Educ. Research v. Savannah College of Art & Design, 244 F.3d 521, 530 (6th Cir. 2001) (the complaint must "'allege a factual predicate concrete enough to warrant further proceedings'") (citation omitted); Mitchell v. Community Care Fellowship, 8 F. App'x 512, 513 (6th Cir. 2001); Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 406 (6th Cir. 1998); Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988) ("[M]ore than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements."). The allegations of Plaintiff's complaint are insufficient to give each defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957).

The complaint lists Officer S. Jones, Officer C. Jones, Officer J. Randall, Sergeant T. Wilson, J. Coleman, officer M. Woody, and Nurse Rivera as "co-defendants," but the complaint contains no factual allegations about these individuals.[5] When a plaintiff completely fails to allege any action by a defendant, it necessarily "appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985). Any claims Plaintiff intends to assert against these persons are DISMISSED, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim on which relief may be granted.

The factual allegations about Defendants Bodenstab and Russel, which are almost incomprehensible, are also insufficient to give them "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. at 47.

Plaintiff's claims against Defendants Love and Tillman arise out of their handling of Plaintiff's grievances or his attempts to file grievances. Likewise, to the extent Plaintiff's allegations against Defendants Bodenstab and Russel can be deciphered, they appear to involve the inmate grievance process. Pursuant to 42 U.S.C. § 1997e(b), "[t]he failure of a State to adopt or adhere to an administrative grievance procedure shall not constitute the basis for an action under section 1997a or 1997c of this title." See also Argue v. Hofmeyer, 80 F. App'x 427, 430 (6th

---

[5]     As previously noted, see supra p. 5, Plaintiff may mean that these individuals are witnesses.

Cir. 2003); <u>Shehee v. Luttrell</u>, 199 F.3d 295, 300 (6th Cir. 1999);
<u>Smith v. Corrections Corp. of Am.</u>, 19 F. App'x 318, 321 (6th Cir.
2001) (holding that prisoner "had no constitutional right to . . .
disciplinary or grievance systems that met his standards"); <u>Irvin
v. Fluery</u>, No. 2:07-cv-117, 2007 WL 3036493, at *3 (W.D. Mich. Oct.
16, 2007) ("[T]he Sixth Circuit and other circuit courts have held
that there is no constitutional right to access to an institutional
grievance procedure."; <u>Mackey v. Carberry</u>, No. 2:07-cv-43, 2007 WL
2479296, at *3 (W.D. Mich. Aug. 28, 2007); <u>Holloway v. Drew</u>, No.
2:07-CV-160-MEF, 2007 WL 1175067, at *2 (M.D. Ala. Apr. 4, 2007)
(report and recommendation); <u>Robertson v. Montgomery County</u>, No. 3
06 0435, 2006 WL 1207646, at *2 (M.D. Tenn. Apr. 27, 2006)
("[S]tate law does not create a liberty interest in the grievance
procedure."); <u>Robinson v. Hastings</u>, 2006 WL 950185, at *4; <u>see also</u>
<u>George v. Smith</u>, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling
against a prisoner on an administrative complaint does not cause or
contribute to the [constitutional] violation. A guard who stands
and watches while another guard beats a prisoner violates the
Constitution; a guard who rejects an administrative complaint about
a completed act of misconduct does not."). These claims are
DISMISSED, pursuant to 42 U.S.C. § 1915(e)(2)(B)(ii) and
1915A(b)(1), for failure to state a claim on which relief may be
granted. The Clerk is directed to terminate Defendants Love,
Bodenstab, and Russel as parties to this action.

Defendant Lester is named a party to this action because
he did not let Plaintiff go to the law library for thirty-five (35)

days when the library was closed. This claim is, in actuality, a claim that Plaintiff was deprived of his First Amendment right of access to the courts. See Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir. 1996); see also Bounds v. Smith, 430 U.S. 817, 822 (1977). The Supreme Court has held that "[t]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds at 828. However,

> Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Lewis v. Casey, 518 U.S. 343, 355 (1996); see also Thaddeus-X v. Blatter, 175 F.3d 378, 391 (6th Cir. 1999) (en banc) (inmates' First Amendment right of access to the courts "extends to direct appeal, habeas corpus applications, and civil rights claims only").

To have standing to pursue a First Amendment claim that he was denied access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to pursue a nonfrivolous legal claim." Rodgers v. Hawley, 14 F. App'x 403, 409 (6th Cir. 2001) (citing Lewis v. Casey, 518 U.S. at 351-53); see also Hadix v. Johnson, 182

F.3d 400, 405-06 (6th Cir. 1999) (explaining how <u>Lewis</u> altered the "actual injury" requirement previously articulated by the Sixth Circuit). In <u>Pilgrim v. Littlefield</u>, 92 F.3d 413, 416 (6th Cir. 1996), the Sixth Circuit explained that "actual injury" can be demonstrated by "the late filing of a court document or the dismissal of an otherwise meritorious claim."

In this case, the complaint does not allege that Plaintiff suffered any actual injury from his inability to use the law library for approximately a month. The complaint does not identify any lawsuit Plaintiff needed to work on,[6] and it does not allege that Plaintiff suffered any actual injury. The Court DISMISSES this claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim on which relief may be granted.

The remainder of Plaintiff's claims arise under the Eighth Amendment, which prohibits cruel and unusual punishment. <u>See generally</u> <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991).[7] An Eighth

---

[6]    Plaintiff was a pretrial detainee when he was incarcerated at the Jail. If he was represented by counsel in his criminal case, his right of access to the courts has been satisfied as a matter of law. <u>See, e.g.</u>, <u>Leveye v. Metropolitan Pub. Defender's Office</u>, 73 F. App'x 792, 794 (6th Cir. 2003); <u>Holt v. Pitts</u>, 702 F.2d 639 (6th Cir. 1983) (per curiam) ("By [plaintiff's] own admission, it is clear that counsel was appointed to represent him in both federal and state actions pending against him. As a matter of law, therefore, the state fulfilled its constitutional obligation to provide him with full access to the courts.").

[7]    Convicted inmates' rights stem from the Eighth Amendment, while pretrial detainees' rights stem from the Fourteenth Amendment. <u>Thompson v. County of Medina</u>, 29 F.3d 238, 242 (6th Cir. 1994); <u>Roberts v. City of Troy</u>, 773 F.2d 720, 723 (6th Cir. 1985). The scope of a detainee's Fourteenth Amendment rights are equivalent to those of a convicted inmate under the Eighth Amendment. <u>Thompson</u>, 29 F.3d at 242; <u>Roberts</u>, 773 F.2d at 723; <u>see also</u> <u>Rankin v. Klevenhagen</u>, 5 F.3d 103, 107 (5th Cir. 1993); <u>Valencia v. Wiggins</u>, 981 F.2d 1440,
(continued...)

12

Amendment claim consists of both objective and subjective components. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994); <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992); <u>Wilson</u>, 501 U.S. at 298; <u>Brooks v. Celeste</u>, 39 F.3d 125, 127-28 (6th Cir. 1994); <u>Hunt v. Reynolds</u>, 974 F.2d 734, 735 (6th Cir. 1992). The objective component requires that the deprivation be "sufficiently serious." <u>Farmer</u>, 511 U.S. at 834; <u>Hudson</u>, 503 U.S. at 8; <u>Wilson</u>, 501 U.S. at 298. The subjective component requires that the official act with the requisite intent, that is, that he have a "sufficiently culpable state of mind." <u>Farmer</u>, 511 U.S. at 834; <u>Wilson</u>, 501 U.S. at 297, 302-03.

To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," <u>Farmer</u>, 511 U.S. at 834; <u>Stewart v. Love</u>, 796 F.2d 43, 44 (6th Cir. 1982), or that he has been deprived of the "minimal civilized measure of life's necessities," <u>Wilson</u>, 501 U.S. at 298 (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981)). The Constitution "'does not mandate comfortable prisons.'" <u>Wilson</u>, 501 U.S. at 298 (quoting <u>Rhodes</u>, 452 U.S. at 349). Rather, "routine discomfort 'is part of the penalty that criminal offenders pay for their offenses against society.'" <u>Hudson</u>, 503 U.S. at 9 (quoting <u>Rhodes</u>, 452 U.S. at 347).

---

[7]      (...continued)
1446 (5th Cir. 1993). <u>See generally</u> <u>Graham v. Connor</u>, 490 U.S. 386, 395 n.10 (1989); <u>Vineyard v. County of Murray</u>, 990 F.2d 1207, 1211-12 (11th Cir. 1993); <u>Gilland v. Owens</u>, 718 F. Supp. 665, 682-83 (W.D. Tenn. 1989). Although Plaintiff was a pretrial detainee during the events set forth in the complaint, the Court will analyze Plaintiff's claims under Eighth Amendment principles because the rights of pretrial detainees are equivalent to those of convicted prisoners.

In considering the types of conditions that constitute a substantial risk of serious harm, the Court considers not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency, *i.e.*, that society does not choose to tolerate this risk in its prisons. <u>Helling v. McKinney</u>, 509 U.S. 25, 36 (1993). The Supreme Court has also emphasized that prisoners can rarely establish an Eighth Amendment violation from a combination of conditions of confinement that, in themselves, do not rise to the level of a constitutional violation:

> <u>Some</u> conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets. . . . To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. <u>Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.</u>

<u>Wilson</u>, 501 U.S. at 304-05 (citations omitted; emphasis added); <u>see also Thompson v. County of Medina, Ohio</u>, 29 F.3d 238, 242 (6th Cir. 1994); <u>Walker v. Mintzes</u>, 771 F.2d 920, 925026 (6th Cir. 1985).

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." <u>Farmer</u>, 511 U.S. at 834; <u>Wilson</u>, 501 U.S. at 297, 302-03. The plaintiff must show that the prison officials acted with "deliberate indifference" to a

14

substantial risk that the prisoner would suffer serious harm. Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 303; Helling v. McKinney, 509 U.S. 25, 32 (1993); Woods v. Lecureux, 110 F.3d 1215, 1222 (6th Cir. 1997); Street v. Corrections Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996); Taylor v. Michigan Dep't of Corrections, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. Thus,

> [a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38 (emphasis added; citations omitted); see also Garretson v. City of Madison Heights, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment.").

Plaintiff has no claim against Defendant Tillman for his statement that he will be unable to prove his case in court, and he

cannot sue Defendant Lester for refusing to tell him why the library was closed. The Supreme Court has recognized that "[t]here is, of course[,] a de minimis level of imposition with which the Constitution is not concerned." Ingraham v. Wright, 430 U.S. 651, 674 (1977); see also Thaddeus-X v. Blatter, 175 F.3d 378, 398 (6th Cir. 1999) (recognizing that "certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations" and that the courts may "weed out" such "inconsequential actions"); Dean v. Conley, 20 F. App'x 294, 295 (6th Cir. 2001) ("The Constitution . . . does not provide an avenue of redress for de minimis events in the life of an inmate."); A'la v. Cobb, No. 98-5257, 2000 WL 303014, at *2 (6th Cir. Mar. 14, 2000) ("[S]ome level of significance is required in order for the actions of prison officials to implicate constitutional concerns. De minimis events simply do not state constitutional claims."). Even verbal threats and racial slurs do not violate the Eighth Amendment. See Wilson, 501 U.S. at 299; Miller v. Wertanen, 109 F. App'x 64, 64 (6th Cir. 2004); Johnson v. Moore, No. 00-6038, 2001 WL 303346, at *2 (6th Cir. Mar. 20, 2001); Owens v. Johnson, No. 99-2094, 2000 WL 876766, at *2 (6th Cir. June 23, 2000) ("The occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude."); Williams v. Gobles, No. 99-1701, 2000 WL 571936, at *1 (6th Cir. May 1, 2000); Owens v. County of Muskegon, No. 99-1379, 1999 WL 1253096, at *1 (6th Cir. Dec. 17, 1999) ("verbal threats do not constitute a § 1983 claim," "[t]he petty exchanges

of insults between a prisoner and guard do not amount to constitutional torts"); <u>Murray v. United States Bureau of Prisons</u>, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("If Murray's allegations are true, the behavior of the prison officials was certainly not commendable. Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."); <u>Ivey v. Wilson</u>, 832 F.2d 950, 955 (6th Cir. 1987) (holding that verbal abuse or harassment does not constitute punishment under the Eighth Amendment). The alleged discourtesy of Defendant Tillman and of Defendant Lester, on a single occasion, do not rise to the level of a constitutional violation. These claims are DISMISSED, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim on which relief may be granted. The Clerk is directed to terminate Defendants Lester and Tillman as parties to this action.

The claims against Defendants Cooper, Webb, Terrie, Hicks, and Stipanuk concern the medical care Plaintiff received at the Jail. "The right to adequate medical care is guaranteed to convicted federal prisoners by the Cruel and Unusual Punishments Clause of the Eighth Amendment, and is made applicable to convicted state prisoners and to pretrial detainees (both federal and state) by the Due Process Clause of the Fourteenth Amendment." <u>Johnson v. Karnes</u>, 398 F.3d 868, 873 (6th Cir. 2005). "A prisoner's right to adequate medical care 'is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical

needs.'" Id. at 874 (quoting Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001)); see also Blackmore v. Kalamazoo County, 390 F.3d 890, 895 (6th Cir. 2004)("The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs. . . . Prison officials' deliberate indifference violates these rights '[w]hen the indifference is manifested by . . . prison guards in intentionally denying or delaying access to medical care . . . ' for a serious medical need.") (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "Although the right to adequate medical care does not encompass the right to be diagnosed correctly, [the Sixth Circuit] has 'long held that prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner.'" Johnson, 398 F.3d at 874 (quoting Danese v. Asman, 875 F.2d 1239, 1244 (6th Cir. 1989)).

The objective component of an Eighth Amendment claim based on a failure to provide adequate medical care requires that a prisoner have a serious medical need. Blackmore, 390 F.3d at 896; Brooks, 39 F.3d at 128. This component can be satisfied in two ways. "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" Blackmore, 390 F.3d at 897 (emphasis in original); see also Johnson, 398 F.3d at 874.

If a prisoner's need for medical attention is not obvious, "the seriousness of a prisoner's medical needs 'may also be decided by the effect of delay in treatment.'" <u>Blackmore</u>, 390 F.3d at 897 (emphasis omitted).[8] Where a prisoner complains about a delay in medical treatment, the Court will "examine the seriousness of a deprivation by examining the effect of the delay in treatment." <u>Napier v. Madison County, Ky.</u>, 238 F.3d 739, 742 (6th Cir. 2001). In those cases, "'[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical information in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" <u>Id.</u>; <u>see also</u> <u>Johnson</u>, 398 F.3d at 874.

The Sixth Circuit has emphasized that

> [t]he "verifying medical evidence" requirement is relevant to those claims involving minor maladies or non-obvious complaints of a serious need for medical care. . . . <u>Napier</u> does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. <u>Napier</u> applies where the plaintiff's "deliberate indifference" claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction

---

[8]    The Sixth Circuit elaborated:

These decisions involve prisoner claims of delay in treatment that caused injury, loss, or handicap. . . . Other examples involve delayed administration of medication. . . , or a prisoner's refusal to take the prescribed medication . . . , or occasional missed doses of medication . . . , or claims based on a determination by medical personnel that medical treatment was unnecessary. . . . Also within this branch are decisions involving whether the prisoner was treated adequately . . . or whether any delay in providing medical care was harmless . . . , or where the prisoner had a "very minor injury for which many people outside prison would not even think of seeking outside medical treatment."

<u>Id.</u> at 898 (citations omitted).

is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

Blackmore, 390 F.3d at 898. Where a prisoner's need for medical attention is obvious, "the plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated. Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." Id. at 900.[9] In those cases, the prisoner may recover for the pain and suffering attributable to the delay. Id. at 899 ("In such cases, the effect of the delay goes to the extent of the injury, not the existence of a serious medical condition. Blackmore was suffering from appendicitis, and it is sufficient that the officers' delay in treatment of an obvious medical emergency posed a substantial risk of serious harm to Blackmore by subjecting him to unnecessary infliction of pain.").

This case involves several alleged denials of medical care, which will be addressed separately. The sole claim against Defendant Hicks is that, after Plaintiff took a drug that was not prescribed for him, she sent him to the medical unit without an escort. Plaintiff allegedly became dizzy and fell while using the

---

[9]    See also Garretson, 407 F.3d at 797 ("Here, Garretson is a diabetic whose condition required insulin injections at regulated intervals—a medically required treatment which she did not receive while housed at Madison Heights. As a result of this omission, she was later admitted to the hospital. Even without specific medical records, the emergency hospital admission coupled with a stay of several days satisfies the objective requirement of a 'sufficiently serious' medical need under Farmer and Napier.").

escalator. By Plaintiff's admission, Defendant Hicks recognized that an inmate who ingests an unprescribed medication may require medical attention, and she promptly sent Plaintiff to the medical department. Under these circumstances, the fact that Defendant Hicks apparently did not realize that Plaintiff was too impaired to ride on an escalator without an escort is, at most, negligence, which does not violate the Eighth Amendment. See supra pp. 15-16. The Court DISMISSES this claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim on which relief may be granted. The Clerk is directed to terminate Defendant Hicks as a party to this action.

Plaintiff sued Defendant Terrie because she (I) gave Plaintiff Dilantin, an anti-seizure medication, rather than the ibuprofen he was supposed to receive; (ii) denied Plaintiff treatment for a headache after an unspecified fall; and (iii) failed to treat an unspecified rash "after the 'outbreak' of the medication." The fact that Defendant Terrie gave Plaintiff medication intended for another prisoner is, at most, negligence, which is not actionable under the Eighth Amendment. See supra pp. 14-15.[10]

Plaintiff's claims that Defendant Terrie did not treat his headache or rash do not satisfy the objective component of an Eighth Amendment violation. Minor injuries frequently do not

---

[10]    The fact that Dilantin is contraindicated for tuberculosis patients taking Isoniazid (see supra p. 4) has no relevance to Plaintiff's claims because he was not prescribed Isoniazid until some after he accidentally ingested three tablets of Dilantin.

require medical treatment, and the complaint sets forth no facts that would make it obvious that Plaintiff had a serious medical need. Clark v. Case, No. 91-6180, 1992 WL 60215, at *2 (6th Cir. Mar. 27, 1992) ("Although Clark complains of headaches, he has not demonstrated a serious medical need sufficient to justify the CAT scan he demands."). If, as Plaintiff seems to contend, he got a rash after his accidental ingestion of the wrong medication, the rash would likely subside with time. Moreover, even if it is assumed that Defendant Terrie misapprehended the severity of his symptoms, medical malpractice does not violate the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); see also Sanderfer v. Nichols, 62 F.3d 151, 154 (6th Cir. 1995) ("Deliberate indifference . . . does not include negligence in diagnosing a medical condition."). The Court DISMISSES these claims, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim on which relief may be granted. The Clerk is directed to terminate Defendant Terrie as a party to this action.

Plaintiff sued Defendant Webb because she (I) failed to provide appropriate treatment after Plaintiff tested positive for the tuberculosis virus in 2002; and (ii) failed promptly to remove Plaintiff from the general population at the Jail in 2002 and 2004. In his original complaint, Plaintiff asserted the following claims against Defendant Webb:

    1.    Plaintiff medical attention denied by Mrs Webb by not responding to plaintiff T.B. result which allowed plaintiff condition to be abused and neglected.

2.  Twice has defendant abuse and neglect plaintiff conditions 9/17/02 and 6/24/04. [A]lso defendant has made the Plaintiff cause the Jail to be poluted [sic] with germs.

3.  For the year 9/02 and the year 6/04 Defendant has been lawless in plaintiff eye sight.[11]

4.  Because of defendant disregarding Plaintiff incoming the Jail system, this visit plaintiff have been in population 42 days with untreated T.B. Germs in Plaintiff [sic] system, the first visit before this one, which were year 2002, plaintiff were in population 155 days germs untreated. Total 197 days of poluted [sic] population improper, negligent conduct, and treatment[.]

(D.E. 1 (irregular capitalization omitted).) Plaintiff also submitted a document, entitled "Affidavit," setting forth the factual basis for his claims against Defendant Webb:

On the 6/26/04 Defendant Mrs Webb from medical lab came to visit 4th floor G-pod where plaintiff house [sic] at. Defendant told plaintiff that he had been expose [sic] with tuberculosis germs in his body which had left plaintiff mentally unbalance [sic]. [P]laintiff didn't know what to think or how to think because plaintiff had been told this same thing before in 2002 by the same person, she also inform [sic] me that I would be treated right away, so on the 7/1/04 plaintiff was taken to the Jail Clinic for chest exrays [sic] by Officer C. Roberson and Officer R. Hudson and was examine [sic] by Doctor Rien[.] He told me that I had a spot on my lung from my ex-rays result that it was very black, so after that I wanted treatments. The Correctional medical system and its agents new [sic] then that I was positive with the T.B. germs so they set appointment on the 7/27/04 to the Memphis Shelby County Health Department where plaintiff were tested positive of tuberculosis. Plaintiff result of arm T.B. test were the same in the year 2002 as it were in 2004 so if plaintiff positive now plaintiff were positive "then" according to the Health Department brochure untreated germs can cause T.B. disease.

---

[11]    This extremely unclear allegation does not appear to mean that Defendant Webb failed to test Plaintiff's eyesight to determine whether he needed glasses. Instead, Plaintiff seems to be saying that, from his point of view, Defendant Webb has violated his right to be free from cruel and unusual punishment.

(Id. (irregular capitalization omitted).)[12] In a later filing, on November 30, 2004, Plaintiff appears to complain that Defendant Webb did not report his case to the Health Department in 2002. (D.E. 5.) It appears, therefore, that Plaintiff's claim about Defendant Webb's actions in 2002 is that she did not order an x-ray and take him to the Health Department for treatment.

Plaintiff's claim that Defendant Webb failed adequately to treat Plaintiff's tuberculosis, or to report him to the Health Department, in 2002 is time barred. A one-year statute of limitations is applicable to § 1983 actions in Tennessee. Tenn. Code Ann. § 28-3-104(a); see Wilson v. Garcia, 471 U.S. 261, 266-268 (1985); Bernt v. Tennessee, 796 F.2d 879 (6th Cir. 1986). The results of Plaintiff's first skin test were allegedly received in September, 2002. The Clerk docketed Plaintiff's complaint on September 16, 2004, although it was postmarked August 25, 2004. Even if Plaintiff is given the benefit of Houston v. Lack, 487 U.S. 266 (1988), he cannot sue for events at the Jail in 2002.

Plaintiff has no standing to sue for the failure to remove him from the general population after he tested positive for exposure to the T.B. virus. As the Supreme Court has explained:

> [T]he irreducible constitutional minimum of standing contains three elements: First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) "actual or imminent, not

---

[12]    The February 16, 2006 order read these allegations to mean that Defendant Webb did not tell Plaintiff about his positive T.B. test in 2002. (D.E. 20 at 5-6.) This does not seem to be quite accurate, as that order also notes that Plaintiff states that he received the same information from Defendant Webb in 2002 as she provided him in 2004. (Id.)

'conjectural' or 'hypothetical' . . . . Second, there
must be a causal connection between the injury and the
conduct complained of . . . . Third, it must be "likely,"
as opposed to merely "speculative," that the injury will
be "redressed by a favorable decision."

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)

(footnote and citations omitted). Plaintiff claims that he

represented a health risk to other inmates but, "since he was not

the aggrieved party, [he lacks] standing to bring these claims."

Percival v. McGinnis, 24 F. App'x 243, 246 (6th Cir. 2001); see

also Corn v. Sparkman, No. 95-5494, 1996 WL 185753 (6th Cir. Apr.

17, 1996) ("A prisoner cannot bring claims on behalf of other

prisons. . . . A prisoner must allege a personal loss and seek to

vindicate a deprivation of his own constitutional rights.").

For all the foregoing reasons, the Court DISMISSES these

claims, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1),

for failure to state a claim on which relief may be granted. The

Clerk is directed to terminate Defendant Webb as a party to this

action.

Plaintiff is suing Defendant Stipanuk because he

allegedly failed to counsel him about his tuberculosis diagnosis.

The complaint reveals that Plaintiff was taken to the Health

Department, where he was provided with medication and literature

about his condition. For the reason previously stated, Plaintiff

has no standing to assert a claim based on the failure to provide

him with information about how to avoid transmitting the disease to

uninfected persons. The Court DISMISSES these claims, pursuant to

28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim on which relief may be granted.

Plaintiff sued Defendant Cooper because he (I) failed adequately to supervise the nursing staff; (ii) allowed Plaintiff to come into contact with other inmates despite knowing that he had tested positive for the T.B. virus; and (iii) did not send Plaintiff for a cat scan after he sustained a head injury. Plaintiff also alleges that, in 2002, Defendant Cooper prescribed Plaintiff an asthma pump to clean tuberculosis germs from his lungs. For the reasons previously stated, the claim about events in 2002 is time barred and Plaintiff has no standing to litigate the claim about the failure to remove him from the general population at the Jail. Plaintiff's claim about the failure to order a cat scan is a disagreement with medical judgment that is not actionable under 42 U.S.C. § 1983. Estelle, 429 U.S. at 107 ("A medical decision not to order an X-ray, or like measures, does not represent cruel or unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court."). The Court DISMISSES each of the claims against Defendant Cooper, except the claim of failure to supervise, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim on which relief may be granted.

Plaintiff sued Defendant Luttrell because he failed adequately to train and supervise Jail employees, and the remaining claim against Defendant Cooper concerns his failure adequately to supervise the nursing staff. There is no respondeat superior

26

liability under § 1983. <u>Bellamy v. Bradley</u>, 729 F.2d 416, 421 (6th Cir. 1984). Instead,

> [t]here must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

<u>Id.</u> (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his subordinates, but fails to act, generally cannot be held liable in his or her individual capacity. <u>Shehee</u>, 199 F.3d at 300; <u>Lillard v. Shelby County Bd. of Educ.</u>, 76 F.3d 716, 727-28 (6th Cir. 1996). A supervisor can be held liable only if he or she "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates," <u>Bellamy</u>, 729 F.2d at 421, or if the allegedly unconstitutional conduct described in the complaint was the direct result of the failure of the supervisor to perform a function he or she was legally obligated to perform, <u>Doe v. Claiborne County, Tenn.</u>, 103 F.3d 495, 511-12 (6th Cir. 1996).

The complaint does not allege any action or inaction by Defendants Luttrell and Cooper that caused or contributed to a constitutional violation. Generalized allegations of failure to supervise or train, such as those in this case, "are more appropriately submitted as evidence to support a failure-to-train theory against the municipality itself, and not the supervisors in their individual capacities." <u>Phillips v. Roane County, Tenn.</u>, 534 F.3d 531 (6th Cir. 2008). To hold a supervisor liable in his

individual capacity for a failure to train or supervise, a plaintiff must "point to a specific action of each individual supervisor," id., which Plaintiff does not do. Moreover, because the Court has dismissed each of the claims against the individual defendants who were directly responsible for Plaintiff's care, it necessarily follows that Defendants Luttrell and Cooper cannot be held liable for a failure properly to supervise or train these staff members.[13]

Therefore, the Court DISMISSES these claims, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim on which relief may be granted. The Clerk is directed to terminate Defendants Luttrell and Cooper as parties to this action.

Plaintiff has also sued Shelby County and CMS, which provided medical care to inmate at the Jail.[14] A local governmental entity "is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the city itself is the wrongdoer." Collins v. City of Harker Heights, 503 U.S. 115, 121 (1992); see also Jett v. Dallas Indep. School Dist., 491 U.S. 701, 726-29 (1989) (discussing

---

[13]    The complaint complains about actions in 2002 by Jail staff who are not named as defendants. Any claim based on these allegations is time barred. See supra p. 24.

[14]    "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." Thomas v. Coble, 55 F. App'x 748, 748 (6th Cir. 2003) (citing Street v. Corrections Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996)). Providing medical care to prisoners is also a traditional state function and, therefore, CMS acts under color of state law.

history of civil rights statutes and concluding that Congress
plainly did not intend to impose vicarious liability on counties,
municipalities or other local governmental bodies); City of Canton
v. Harris, 489 U.S. 378, 388 (1989) (rejecting simple vicarious
liability for municipalities under § 1983); City of St. Louis v.
Praprotnik, 458 U.S. 112, 122 (1988) (interpreting rejection of
respondeat superior liability by Monell v. Dep't of Soc. Servs.,
436 U.S. 658, 691 (1978), as a command that "local governments .
. . should be held responsible when, and only when, their official
policies cause their employees to violate another person's
constitutional rights"); Pembaur v. City of Cincinnati, 475 U.S.
469, 480-81 (1986) (same); Stemler v. City of Florence, 126 F.3d
856, 865 (6th Cir. 1997) (rejecting claims against city and county
and holding that "in order to state a claim against a city or a
county under § 1983, a plaintiff must show that his injury was
caused by an unconstitutional 'policy' or 'custom' of the
municipality"). To establish municipal liability, a plaintiff must
demonstrate

> (1) that the City pursued an official custom or policy of
> failing to adequately train, supervise, or discipline its
> officers in a particular matter, and (2) that such
> official policy or custom was adopted by the official
> makers of policy with "deliberate indifference" towards
> the constitutional rights of persons affected by the
> policy or custom.

Haverstick v. Financial Fed. Credit, Inc., 32 F.3d 989, 996 n.8
(6th Cir. 1994) (citing City of Canton, 489 U.S. at 387-88). Thus,
"'a plaintiff must "identify the policy, connect the policy to the
city itself and show that the particular injury was incurred

because of the execution of that policy."'" <u>Searcy v. City of Dayton</u>, 38 F.3d 282, 287 (6th Cir. 1994) (citations omitted). The Sixth Circuit has applied this standard to claims against private corporations that operate prisons. <u>Thomas v. Coble</u>, 55 F. App'x at 748-49; <u>Street</u>, 102 F.3d at 817-18; <u>Johnson v. Corrections Corp. of Am.</u>, 26 F. App'x 386, 388 (6th Cir. 2001).

In this case, Plaintiff seeks to hold Shelby County and CMS liable solely on a theory of <u>respondeat superior</u>. As previously mentioned, <u>see supra</u> pp. 27-28, Plaintiff's allegations of failure to supervise and train, which were made against Defendants Luttrell and Cooper, are properly asserted against Shelby County and CMS. Because the Court has dismissed each of the claims against the individual defendants who were directly responsible for Plaintiff's care, it necessarily follows that the claims against Shelby County and CMS must be dismissed. The Court DISMISSES these claims, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim on which relief may be granted.

Because the claims against all parties have been dismissed for failure to state a claim, the case is DISMISSED. Plaintiff's third motion for appointment of counsel, filed on August 7, 2008, is DENIED. The Clerk is directed to enter judgment for Defendants. All pending motions are DENIED as moot.

The Court must also consider whether Plaintiff should be allowed to appeal this decision <u>in forma pauperis</u>, should he seek to do so. The United States Court of Appeals requires that all district courts in the circuit determine, in all cases where the

30

appellant seeks to proceed in forma pauperis, whether the appeal is frivolous. Floyd v. United States Postal Serv., 105 F.3d 274, 277 (6th Cir. 1997). Twenty-eight U.S.C. § 1915(a)(3) provides that "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."

Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal in forma pauperis must obtain pauper status under Fed. R. App. P. 24(a). See Callihan v. Schneider, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a)(3) provides that, if a party was permitted to proceed in forma pauperis in the district court, he may also proceed on appeal in forma pauperis without further authorization unless the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis." If the district court denies pauper status, the party may file a motion to proceed in forma pauperis in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). The test under 28 U.S.C. § 1915(a) for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any non-frivolous issue. Id. at 445-46. The same considerations that led the Court to grant Defendants' motions to dismiss or for summary judgment also compel the conclusion that an appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good

faith.  It  is  therefore  CERTIFIED,  pursuant  to  28  U.S.C.  §
1915(a)(3), that any appeal in this matter by Plaintiff would not
be taken in good faith.

The final matter to be addressed is the assessment of a
filing fee if Plaintiff appeals the dismissal of this case. In
McGore v. Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997), the
Sixth Circuit set out specific procedures for implementing the
PLRA. Therefore, Plaintiff is instructed that, if he wishes to take
advantage of the installment procedures for paying the appellate
filing fee, he must comply with the procedures set out in McGore
and 28 U.S.C. § 1915(b).

For analysis under 28 U.S.C. § 1915(g) of future filings,
if any, by Plaintiff, this is the first dismissal of one of his
cases as frivolous or for failure to state a claim.

IT IS SO ORDERED this 6th day of October, 2008.


**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

32